IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEFFREY NISNICK, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No.<br>1:16-cv-04002 (JBS/AMD) |
| UNITED STATES POSTAL SERVICE, | |
| Defendant. | **OPINION** |

APPEARANCES:

Mr. Jeffrey Nisnick
545 Norwood Road
Mount Laurel, NJ 08054
     Plaintiff pro se

Elizabeth Ann Pascal, Assistant U.S. Attorney
Office of the U.S. Attorney
401 Market Street
P.O. Box 2098
Camden, NJ 08101
     Attorney for Defendant United States Postal Service

**SIMANDLE, Chief Judge:**

When an insured package and its contents are damaged in the mail, the sender or the addressee may make a claim for the loss. The Postal Service processes that claim in accordance with regulations contained in its Domestic Mail Manual, the requirements of which are allegedly not displayed to the claimant who initiates an online claims process. One requirement in the D.M.M. is that the claimant bring the damaged packaging

and contents to a post office for inspection. In the present
case, Plaintiff, who was the insured sender, claims he supplied
accurate, detailed photos of the packaging damage, taken by the
addressee, but was uninformed of the Postal Service's
requirement to obtain and present the actual packaging until
after the addressee had discarded it. Plaintiff alleges that the
Postal Service arbitrarily failed to consider the photographs as
the substantial equivalent and rejected his claim for failure to
present the original packaging. This case presents, among other
issues, whether the Postal Service's denial was arbitrary,
capricious, or otherwise not in accordance with law.

    This matter comes before the Court on Defendant United
States Postal Service's motion for summary judgment. [Docket
Item 7.] Plaintiff filed a response [Docket Item 10] and the
motion is decided without oral argument pursuant to Rule 78,
Fed. R. Civ. P.

    On June 7, 2016, Plaintiff Jeffrey Nisnick filed a civil
lawsuit in the small claims court of the New Jersey Superior
Court in Burlington County, demanding $750 in compensatory
damages, as well as punitive damages and costs. Defendant
subsequently removed the case to this Court and Plaintiff filed
an Amended Complaint on July 20. 2016. [Docket Items 1, 6.]
Plaintiff also now states that he seeks an injunction "that

forces the Defendant to immediately stop their misconduct as well as revise their website to properly notify and instruct all future claimants of what will be required during the claims submission and review process. Said revision should not allow online claimants to start an online claim without having agreed to having understood the pertinent version of instructions, and same instructions should be reiterated in the confirmation emails." [Docket Item 10-4 at 15 to 16.]

Defendant argues, first, that Plaintiff failed to exhaust his administrative remedies by failing to comply with Defendant's regulations concerning indemnity claims for insured mail. Defendant also argues that Plaintiff has not produced any evidence that its denial of his claim for that failure to comply with regulations was arbitrary and capricious. Plaintiff contests these arguments, stating that Defendant presented ambiguous and sometimes conflicting instructions for pursuing his insurance claim and that this conduct was arbitrary and capricious. He also contends that Defendants' employees engaged in actions which were arbitrary and capricious. For the reasons discussed below, the Court finds that any failure to exhaust administrative remedies shall be excused, and that the record contains sufficient evidence and/or allegations to allow a reasonable finder of fact to find in favor of Plaintiff.

Accordingly, Defendant's Motion for Summary Judgment will be denied.


## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's suit arises out of his purchase of insurance on a package he shipped with Defendant on February 11, 2016. [Docket Item 1-1 at 6.] Plaintiff filed a claim under that insurance policy when the package was received by the addressee in a damaged condition. Plaintiff contends that Defendant wrongfully denied his insurance claim, thereby breaching its contract with Plaintiff. [Id.]

All facts are taken from the complaints, motion papers, responses, and exhibits thereto; they are construed in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff sold a microphone preamp on eBay to a buyer located in Florida. [Docket Item 10-3 at 55; 10-4 at 10.] Plaintiff bought optional insurance from Defendant for $7.00 in addition to postage in the amount of $10.66 to send the item via Priority Mail. [Docket Item 10-3 at 61.] Plaintiff shipped the item with Defendant at the Mount Laurel Post Office on February 11, 2016. [Docket Item 10-3 at 78.] The tracking number of the item was 9406209699938205425411. [Docket Item 10-3 at 74.] On or around February 17, 2016, the buyer contacted Plaintiff to tell

him that the item had arrived damaged. The outer packaging was damaged and the item inside was broken. [Docket Item 10-3 at 62.] The buyer included clear, color, and reasonably detailed photographs of both the damaged packaging and the broken preamp. [Docket Item 10-3 at 66-69.][1] Plaintiff sent a return shipping label to the buyer on or around February 18, 2016, and the buyer shipped the broken preamp back to Plaintiff sometime after February 18. [Docket Item 10-3 at 63-64.] Plaintiff then issued a refund of $499.95 to the buyer. [Docket Item 10-3 at 70.]

Plaintiff submitted a claim under the insurance he purchased from Defendant on the same date, February 18, 2016, by going to Defendant's website. [Docket Item 10-4 at 10.] Plaintiff claims that when he submitted the claim, the website had, at or near the top of the webpage, the "Start an Online Claim" button, followed by a blank space equivalent to several lines of text, followed by an abridged set of instructions for filing an insurance claim. [Docket Items 10-4 at 8; 10-3 at 14.] Those instructions included the following language, approximately three paragraphs down:

> Photos that clearly show the extent of damage will
> help with your case. If you received something

---

[1] While the copies of the photographs that are visible on CM/ECF are of low quality, Plaintiff has provided the Court with legible, clear color photographs in the courtesy copy he filed. The Court sees no reason to believe Plaintiff has not provided Defendant with copies of equivalent good quality.

> damaged, please hang onto it until your claim is
> settled. You may be asked to take them to the local
> Post Office for inspection later. Please do not reship
> the package.

[Docket Items 10-4 at 9; 10-3 at 17.] Plaintiff contends that Defendant redesigned this webpage in April of 2016 to place the abridged instructions above the "Start an Online Claim" button. [Docket Item 10-4 at 8.] He also contends that the language quoted above was changed sometime between April and August of 2016 from "If you received something damaged, please hang onto it" to "If you received something damaged, please hang onto the original packaging and damaged item[.]" [Docket Item 10-4 at 14.][2]

Plaintiff states that the confirmation email from Defendant he received on February 18, 2016, acknowledging the opening of his claim, did not contain, reiterate, or otherwise refer Plaintiff to the abridged instructions on the USPS website or to the Domestic Mail Manual. [Docket Item 10-4 at 10.] He also states his belief that he was not provided with and did not see any instructions to the effect that he needed to retain the original packaging and not reship the damaged item on the USPS

---

[2] To the extent that such redesign and rewording constitutes "subsequent remedial measures" aimed at preventing the type of customer confusion Plaintiff contends he experienced, such a change would be inadmissible to prove Defendant's culpable conduct or a need for warning or instruction under F. R. Evid. 407 for sound public policy reasons.

website once he clicked the "Start an Online Claim" button and began the online claims process. Id.

Sometime between February 18 and February 22, 2016, Defendant prepared and sent a letter to Plaintiff regarding his claim, which stated:

> In response to the insurance claim for missing contents or damaged item(s) referenced above, please present the item(s) and mailing container including the wrapping, packaging, and any other contents received, along with this letter, to a Post Office for inspection within 20 days. If this evidence of damage is not available for inspection, your claim may be denied.

[Docket Items 7-3 at 2; 10-3 at 39.] Defendant also requested that Plaintiff provide evidence of insurance and mailing in the form of a receipt or mailing label. [Docket Item 10-3 at 40.] Plaintiff contends that he received this letter on February 26, 2016. This was two days after he received the return-shipped item from the eBay buyer, and accordingly, several days after the buyer shipped the item back to Plaintiff without the damaged original packaging. [Docket Item 10-5 at 2; 10-3 at 51.] Plaintiff states that he mailed his appeal package with supporting documentation to the USPS Claims Division in St. Louis, MO, on March 2, 2016, from the Marlton, NJ Post Office. [Docket Item 10-2 at 3.]

Defendant's internal regulations, viewable at http://about.usps.com/postal-bulletin/2014/pb22383/html/info_001.htm, state that when "customers bring their damaged item to the Post Office for damage inspection," Postal Service employees must complete PS Form 3831, Receipt for Article(s) Damaged in Mails (which is then provided to the customer), and, "[i]n the back office," complete PS Form 2856, Damage Report of Insured Parcel and Contents (which is not to be provided to the customer before or after the employee completes it). [Docket Item 7-1 at 4.] While those regulations indicate only that those procedures should be followed when a customer brings "their damaged item" for inspection, this internal regulation also includes a "FAQ" section that states, in response to a question about whether the addressee or the sender should bring the package to a local Post Office, "The addressee should retain the damaged package, all contents, wrappings, packaging, etc., until he or she received a letter from USPS instructing him or her to bring it to the Post Office for inspection." Id.

Plaintiff contends that "postal employees were unwilling to inspect the Plaintiff's materials and unwilling to even begin to fill out PS Form 2856." [Docket Item 10-5 at 3.] He states that he "brought his 'damaged item' to two Post Offices for damage

inspection, and none of the above 'actions required' [by the internal regulations cited above] by postal service employees were willing to be performed by postal service employees at either location." [Docket Items 10-5 at 4, 9; 10-3 at 51.]

On March 22 or March 23[3], 2016, Defendant prepared and sent a letter to Plaintiff telling him that his claim was denied because Defendant did not receive "the information we requested in our previous correspondence within 30 days." Specifically, Defendant stated that it "never received a damage report (PS FORM 2856). This information was requested from the addressee on 2/18/16." [Docket Items 7-3 at 3; 10-3 at 41.] Pursuant to that letter, Plaintiff timely and appropriately appealed. [Docket Item 7-3 at 4.] Plaintiff also notes that while he was impliedly told to provide Defendant with PS Form 2856, in actuality, he would not have been able to do so because PS Form 2856 was an internal form that was not to be provided to customers. [Docket Entry 10-5 at 4.]

On April 12 or 13, 2016, Defendant prepared and sent a letter to Plaintiff telling him that it was not changing its original decision to deny his claim. [Docket Items 7-3 at 4; 10-

---

[3] Defendant and Plaintiff dispute the dates of certain letters sent by Defendant to Plaintiff. Both dates have been noted; Plaintiff cites the later date in each instance. [Docket Item 10-5 at 4 to 5.]

3 at 42.] The letter stated: "This office never received proof
of damage (PS Form 2856). This was requested from the addressee
and the mailer. Please provide this office with an official
damage report (PS Form 2856) along with a written appeal for the
item(s) and/or container of the claim referenced above so that
an accurate decision can be made on the claim." [Id.] The letter
also stated that Plaintiff could file a final appeal with the
Office of the Consumer Advocate within 30 days of the date of
that letter. Plaintiff did so. [Docket Item 7-3 at 5.]

On April 21 or 22, 2016, Plaintiff received another letter,
this one from Debra C. Fuller, a Domestic Claim Appeal
Specialist with Defendant's Office of the Consumer Advocate. In
this letter, Defendant stated that it "must uphold the decision
issued by the St. Louis Accounting Services officials for this
claim. Postal regulations provide that the damaged article,
container, packaging, and any other items received must be
presented by the addressee to the Postal Service for inspection
in support of claims for damage (Domestic Mail Manual, Section
609.2). The original mailing container and packaging were not
presented for inspection. Therefore, we were unable to determine
if the items were damaged by postal mishandling. . . . Under the
above circumstances, your claim cannot be approved for payment.

This office is the final level of postal authority concerning claim appeals." [Docket Item 10-3 at 43.]

Plaintiff subsequently filed his small claims case, and Defendant removed to this Court.


## II.  STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

However, a claim of sovereign immunity is assessed as a motion for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). See, e.g., Snow v. U.S. Postal Serv., 778 F. Supp. 2d 102, 105-06 (D. Maine 2011) (Postal Service claimed sovereign immunity; court considered motion as motion to dismiss). A motion to dismiss under Rule 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

Similarly, a claim that a plaintiff has failed to exhaust administrative remedies is proper grounds for dismissal for lack of subject matter jurisdiction, not summary judgment. See Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997); Blanc v. U.S. Postal Serv., No. 14-CV-1404, 2014 WL 931220, at *3 (E.D.N.Y. Mar. 10, 2014) (complaint regarding broken vase indemnity claim dismissed for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies as prescribed by Domestic Mail Manual ["D.M.M."]).

**III. ANALYSIS**

**A. Tort claims**

Plaintiff argues that Defendant engaged in deceptive trade practices, including "bait and switch." To the extent that these claims sound in tort, they must be dismissed.

It is well-settled that "the Postal Service enjoys federal sovereign immunity absent a waiver." Dolan v. U.S. Postal Serv., 546 U.S. 481, 484 (2006). The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2674, applies to tort claims "arising out of activities of the Postal Service," under the Postal Reorganization Act, 39 U.S.C. § 409(c). However, the "FTCA qualifies its waiver of sovereign immunity for certain categories of claims[;] . . . [i]f one of the exceptions applies, the bar of sovereign immunity remains." Dolan, 546

U.S., supra, at 485. Section 2680(b) of the FTCA is one such exception. It provides that "the provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." In general, sovereign immunity is construed narrowly and in favor of the Government: "[T]he scope of Congress's waiver [must] be clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then we take the interpretation most favorable to the Government." F.A.A. v. Cooper, 566 U.S. 284, 291 (2012).

To the extent that Plaintiff's claims sound in tort, Defendant has sovereign immunity under § 2680(b) of the FTCA and those claims must be dismissed.

**B. Contract claims**

Because Plaintiff's claims sound at least equally in contract due to the insurance he purchased before shipping his item, which contract thereof he claims Defendant breached, § 2680(b) does not preclude his suit entirely. "However, traditional contract doctrine does not apply to claims for breach of postal insurance contracts because the 'postal insurance regulations are promulgated pursuant to statutory authority, and therefore have the force and effect of law.'"

Mansy v. Kemper, No. 2:11-cv-265, 2012 WL 2887220, *2 (E.D. Tenn. July 13, 2012) (citing Ridgway Hatcheries v. U.S., 278 F. Supp. 441, 443 (N.D. Ohio 1968)). The applicable regulations are those contained in the D.M.M., which lay out the process of filing (and, if necessary, contesting the determination of) an indemnity claim for lost or damaged items insured by the Postal Service. See Cascio v. U.S. Postal Serv., No. 05-CV-3033, 2005 WL 2862584, at *3 (E.D.Pa. Oct. 31, 2005).

While Plaintiff lays out evidence that he was not provided with the regulations contained in the D.M.M., nor directed to the D.M.M., and claims that he had no actual knowledge of its contents (which were at times, he claims, even contradicted by other instructions USPS provided), it is well settled law that "the DMM is incorporated by reference into the Code of Federal Regulations, it is deemed published in the Federal Register, 39 C.F.R. § 111.1, and a plaintiff is presumed to have notice of the DMM's contents." Gelbfish v. U.S. Postal Serv., 51 F. Supp. 2d 252, 254 (E.D.N.Y 1999). See also Frank Mastoloni & Sons, Inc. v. U.S. Postal Serv., 546 F.Supp. 415, 419 n.4 (S.D.N.Y. 1982); 44 U.S.C. § 1507; Ridgway Hatcheries, supra, 278 F. Supp. at 443; Mansy, supra, at *2; Cascio, supra, at *3; Taylor v. U.S. Post Office Dept., 293 F. Supp. 422, 422 (D.Mo. 1968); Dosso v. U.S. Postal Serv., No. CCB-10-1703, 2010 WL 4900988, at

*4 (D.Md. Nov. 24, 2010); <u>Jamil v. U.S. Postal Serv.</u>, No. C 05-5121 RS, 2006 WL 988825, at *2 (N.D. Cal. Apr. 14, 2006).

Section 609 of the D.M.M. provides as follows with regard to insurance claims for lost or damaged packages:

> 1.3 Who May File: A claim may be filed by:
>     a. Either the mailer or addressee, for damaged articles or articles with some or all of the contents missing. . . .
>
> 1.5.1 Claims Filed Online: . . . Evidence of insurance must be retained by the customer until the claim is resolved. Upon written request by the USPS, the customer must submit proof of damage (see 2.0) for damaged items or missing contents, in person to a local Post Office for inspection, retention, and disposition in accordance with the claims decision.
>
> 1.5.2 Claims Filed by Mail: Customers may file a claim by completing a Form 1000 and mailing the original copy to address indicated on the form, accompanied by proof of value. Obtain Form 1000 by calling 1-800-332-0317, option 9. For pieces with multiple extra services, the customer must provide original receipts for all services purchased. Upon request by the USPS, the customer must submit proof of damage under 2.0 for damaged items or missing contents.
>
> 2.0 Providing Proof of Loss or Damage: If a claim is filed because some or all of the contents are missing or damaged, the addressee must retain the mailing container, including any damaged articles, all packaging, and any contents received. Upon written request by the USPS, the addressee must make this proof available to the local Post Office for inspection, retention, and disposition in accordance with the claims decision. Failure to do so will result in denial of the claim.

[Docket Item 7-3 at 7 to 9.] If customers wish to contest an initial determination of the Postal Service, they may appeal

within 30 days. [DMM § 609.6.2, Docket Item 7-3 at 15.] The DMM also provides for one further level of appeal, to be filed within 30 days of the intermediate decision, for "final review and decision." [DMM § 609.6.3, Docket Item 7-3 at 15.]

### 1. Exhaustion

Defendant claims that Plaintiff's case must be dismissed because Plaintiff failed to exhaust his administrative remedies before filing his case. The Court disagrees.

"In order for the USPS to be liable under a contract theory, a party seeking to recover for the loss of registered mail must exhaust all 'administrative remedies available under the postal regulations'" before the party files a lawsuit. McBride v. U.S. Postal Serv., No. 07-CV-0446, 2007 WL 1965337, at *2 (E.D.N.Y. June 29, 2007) (quoting Djordjevic v. U.S. Postal Serv., 911 F. Supp. 72, 75 (E.D.N.Y. 1995)).

It appears undisputed to the Court that Plaintiff appropriately and timely filed his initial insurance claim as well as all appeals. The basis for Defendant's claim that Plaintiff failed to exhaust his administrative remedies is that Plaintiff did not bring the original damaged packaging for inspection to his local post office. Because of this, no Postal Service employee filled out PS Form 2856. Because it lacked this completed form in hand, Defendant denied Plaintiff's claim.

Plaintiff counters that he did not know of the requirement to bring the original packaging for inspection at the Post Office and did not learn of it in timely enough fashion to allow for that to happen (i.e., by instructing the addressee/eBay buyer not to discard the packaging, asking the eBay buyer to mail the packaging back to Plaintiff intact, and/or asking the eBay buyer to take the packaging and item to the Post Office himself for inspection). Aside from the presumption of knowledge of the D.M.M.'s provisions that is applicable to Plaintiff, it does not appear that Plaintiff was substantively or actually informed of this requirement until Defendant's February letter – or, at least, there is a genuine issue of material fact as to this issue. As noted, Plaintiff obtained from the addressee and provided to the Postal Service detailed color photographs of the damaged packaging and contents. Plaintiff states that he behaved reasonably by refunding the buyer and providing a return shipping label.

It appears, furthermore, that when Plaintiff did learn of the requirement, he brought the photos of the original packaging (which a reasonable finder of fact could conclude accurately and clearly represented the damage to that packaging) to two Post Offices, but no Postal Service employee would fill out or file PS Form 2856. Plaintiff argues in essence that, contrary to

Defendant's letters to him and its current position, Defendant itself frustrated his ability to provide Defendant with PS Form 2856, and his failure to do so should not constitute failure to exhaust his administrative remedies when Defendant itself was the cause of the omission.

Defendant claims that the case of Dosso v. U.S. Postal Serv., No. 10-1703, 2010 WL 4900988 (D.Md. Nov. 24, 2014), is analogous to this case. In Dosso, the plaintiff (who claimed USPS lost a laptop he mailed overseas) was required by the International Mail Manual (the D.M.M.'s international counterpart) to provide certain evidence as proof of the item's value. Notably, the Postal Service and the I.M.M. did not require Dosso to provide an original purchase receipt, but accepted other forms of establishing value--namely, "a website print out of the kind of computer[]". Id. at *2. He did not do so, and instead filed a lawsuit. The Court failed to excuse Dosso's non-exhaustion of the I.M.M.'s indemnity claims process and dismissed his lawsuit. Id. at *4.

The Court does not find Dosso to be squarely on point with the instant case, however. In Dosso, the Plaintiff inexplicably failed to provide evidence of value which was reasonably within his power to provide (and indeed, he ended up providing to the Postal Service during motion practice); furthermore, the court,

when explaining why it would find unpersuasive Dosso's claim not
to have adequate notice of the I.M.M.'s provisions, stated as
follows: "[T]he government has explained to Mr. Dosso that so
long as he provides some documentation of the value of an item
comparable to the lost laptop, the Postal Service will consider
his claim for indemnification." Id. (emphasis added). Here, in
contrast, Plaintiff has at least raised a genuine dispute of
material fact about whether he has provided all the information
he reasonably could have to comply with the requirements of the
D.M.M., and indeed, whether he can be said to have substantially
complied with the administrative procedures of the Postal
Service under the D.M.M. This is not the unexplained and/or
untimely failure to provide requested information of Dosso.

Dosso is instructive, however, in its discussion of
exceptions to the administrative exhaustion requirement. While
the Court is aware of one district court decision holding that
administrative exhaustion may not be excused where a customer
sues the Postal Service over a damaged item, see Snow v. U.S.
Postal Serv., 778 F. Supp. 2d 102, 107-08 (D. Maine 2011), the
greater number of relevant cases either explicitly or implicitly
assume that exhaustion (i.e., strict compliance with the D.M.M.
or I.M.M.) may be excused under certain circumstances. See
Dosso; Simat USA, Inc. v. U.S. Postal Serv., 218 F. Supp. 2d

365, 368 (S.D.N.Y. 2002); Cascio, supra, at *3 (assessing plaintiff's claim that her untimely filing should be excused by ambiguous form and/or Postal Service employee misrepresentation); Elsass v. U.S. Postal Serv., No. CV011103PCTJAT, 2003 WL 21537730, at *3 (D. Ariz. March 7, 2003)(discussing the availability of equitable estoppel to overcome violation of D.M.M. provisions); Gelbfish, 51 F. Supp. 2d, supra, at 254 (assessing whether failure to exhaust should be waived for lack of notice).

Both Dosso and Simat USA discuss when a court ought excuse a litigant's failure to exhaust administrative remedies. "A plaintiff challenging an agency's actions is excused from exhausting such remedies only 'if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.'" Dosso, supra, at *2 (citing McCarthy v. Madigan, 503 U.S. 140, 146 (1992)). Simat USA states that "there are four established exceptions to the general rule requiring exhaustion. Exhaustion may not be required when '(1) available remedies provide no "genuine opportunity for adequate relief"; (2) irreparable injury may occur without immediate judicial relief; (2) administrative appeal would be "futile"; and (4) in certain instances a plaintiff has raised a

substantial constitutional question.'" Simat USA, 218 F. Supp.
2d, supra, at 368 (citing Guitard v. U.S. Sec'y of the Navy, 967
F.2d 737, 741 (2d Cir. 1992) (further internal citations
omitted)).

Dosso also states that "[c]ourts have excused plaintiffs
from exhausting administrative remedies where, for example, (1)
there are no facts in dispute; (2) the disputed issue [is]
outside the agency's expertise; (3) the agency may not have the
authority to change its decision in a way that would satisfy the
challenger's objections; (4) requiring resort to the
administrative process may prejudice the litigants' court
action; or (5) the administrative process may be inadequate
because of agency bias." Dosso, supra, at *2 (internal citations
omitted). The First Circuit, interpreting McCarthy, has
described these exceptions somewhat differently: (1) "when
unreasonable or indefinite delay threatens unduly to prejudice
the subsequent bringing of a judicial action"; (2) if "a
particular plaintiff may suffer irreparable harm if unable to
secure immediate judicial consideration of his claim"; (3) "if
substantial doubt exists about whether the agency is empowered
to grant meaningful redress"; and (4) when "there are clear,
objectively verifiable indicia of administrative taint."

Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997).

The Court is mindful of the importance of requiring administrative exhaustion "because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy, 503 U.S. supra, at 145. The Court is also mindful of the overall rationality of requiring adherence to the provisions of the D.M.M.

However, on the facts of this case, and in this rare instance, the Court is inclined to find that Plaintiff has exhibited substantial compliance with the administrative process provided for in the D.M.M. and has not failed to exhaust that process. In the alternative, the Court finds that, on these facts and in this rare instance, any such failure to exhaust should be excused.

The vast majority of cases with which this Court is familiar where claims against the Postal Service were dismissed for failure to exhaust administrative remedies involved plaintiffs like Mr. Dosso who inexplicably failed to timely and appropriately pursue their indemnity claims under the D.M.M. or I.M.M.'s administrative process: who failed to file a claim at all, or who filed one or none of the prescribed appeals. These claims were dismissed without prejudice. See, e.g., Edwards v.

U.S. Postal Serv., No. 15-CV-818, 2016 WL 5019192 (S.D. Ill.
Feb. 3, 2016) (plaintiff never filed claim with Postal Service);
Djordjevic, 911 F. Supp., supra, at 74 (plaintiff did not
respond, in course of claims process, to USPS request for
additional information and instead filed lawsuit); Gelbfish, 51
F. Supp. 2d, supra, at 254 (plaintiff did not appeal initial
Postal Service determination); Dosso, supra, at *3 (plaintiff
did not complete appeals process); Blanc, supra, at *3
(plaintiff filed initial claim but did not appeal); Mansy,
supra, at *1 (plaintiff filed first appeal but not second
appeal); Simat USA, 218 F. Supp. 2d, supra, at 368 (plaintiff
did not file second appeal).

This is not that case. Here, Plaintiff followed the
D.M.M.'s provisions to what he claims was the best of his
ability. It is undisputed that he timely filed his claims and
pursued the necessary levels of the D.M.M.'s appeals process.
Although Defendant states that it "provid[ed] Mr. Nisnick at
least three opportunities during the administrative process to
comply with the requirements of the Domestic Mail Manual"
[Docket Item 7-1 at 6], the Court believes that there is
sufficient evidence to allow a reasonable finder of fact to
conclude that such opportunities were illusory. While Defendant
contends that "neither Mr. Nisnick nor the recipient ever

brought the container, packaging or the damaged contents to a local Post Office for inspection[,]" Plaintiff avers that he did go to his local Post Office with clear <u>photos</u> of the packaging (as well as the damaged item), showing the damage to it, because the damaged packaging was no longer available. Given that, a reasonable finder of fact could conclude that Plaintiff did not fail to exhaust the D.M.M.'s administrative remedy scheme, or, in the alternative, that he substantially complied with said scheme.

To the extent that Plaintiff failed to comply strictly with the provisions of the D.M.M. because he did not and/or could not present the original packaging material, the Court finds relevant to the instant set of facts the established exceptions of futility; a lack of available remedies with genuine opportunity for adequate relief; and lack of agency authority to change its decision in a way that would meet Plaintiff's objections. <u>See</u> <u>Simat USA</u>, 218 F. Supp. 2d, <u>supra</u>, at 368 and <u>Dosso</u>, <u>supra</u>, at *4.

Establishing futility "must be anchored in demonstrable reality. A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule. . . . [A]n essential element of the claim of futility . . . is that all reasonable

possibilities of adequate administrative relief have been effectively foreclosed." Portela-Gonzalez, 109 F.3d, supra, at 78 (internal citations omitted).

On the facts in this case, the Court finds that the futility exception applies because Plaintiff, were he again to resort to Defendant's administrative process, would have no available avenues for relief. He has pursued his claim under the D.M.M., appealed it as prescribed by the D.M.M., and obtained a final, unfavorable, decision. The only thing he has not done-- i.e., the failure that Defendant points to as Plaintiff's failure to exhaust, namely, to present the original packaging for inspection at the Post Office--is something that is no more in his power now than it was when he initially filed his appeals. To instruct Plaintiff to return to that process, especially when he has already received a final determination from the Office of the Consumer Advocate, would be to instruct Plaintiff to ask for something he will not receive. See, e.g., Houghton v. Shafer, 392 U.S. 639, 640; Gonzalez v. O'Connell, 355 F.3d 1010, 1018-19 (7th Cir. 2004). For similar reasons, the Court finds that Plaintiff has no additional available remedies for adequate relief. The Postal Service has adjudicated his claim fully and finally and "there is nothing to indicate [it will] change its position . . . [and plaintiff has] no

reasonable prospect of obtaining relief." Gonzalez, 355 F.3d,
supra, at 1019 (internal citations omitted).

Further, to the extent that Defendant claims that the
D.M.M.'s provisions are absolute and final and "USPS personnel
are NOT authorized to change or waive these regulations,"
[Docket Item 7-1 at 13], the Court also finds that Defendant
lacks the authority to change its decision in a way that would
meet Plaintiff's objections, which the Court understands to be
Plaintiff's contention that it was arbitrary and capricious
under the circumstances for Defendant to ignore the evidence he
did have of the damaged packaging (i.e., the photographs) and
insist on the packaging itself, which was no longer available.

For these reasons, the Court finds that Plaintiff's
purported failure to exhaust the administrative remedies
available to him under the D.M.M. is excused and declines to
dismiss his claims for lack of subject matter jurisdiction.

### 2. Arbitrary and Capricious, an Abuse of Discretion, or Otherwise not in Accordance with the Law

Defendant argues that it is entitled to summary judgment
because "the record[] lacks any evidence that could meet the
'arbitrary and capricious' standard." [Docket Item 7-1 at 17.]
As Defendant puts it: "The simple fact is that Mr. Nisnick never
complied with the Postal Service's repeated requests to produce
the alleged damaged package for inspection." Id. at 18. Drawing

all inferences in favor of Plaintiff, and keeping in mind the fact that the discovery process does not appear to have been completed when Defendant filed the instant motion, the Court finds material facts in dispute.

Under the Administrative Procedure Act, the court "may not overturn a USPS action unless it was arbitrary and capricious." Elsass, supra, at *2 (citing 5 U.S.C. § 706). The court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974) (internal citations omitted). The reviewing court "must defer to any reasonable interpretation given the statute by the agency charged with its administration." Arkansas Poultry Federation v. U.S.E.P.A., 852 F.2d 324 (8th Cir. 1988) (citing E.P.A. v. National Crushed Stone Ass'n, 449 U.S. 64, 83 (1980)). If the agency's decision "articulate[s] a rational connection between the facts found and the choice made," that decision should be upheld. Bowman, supra, 419 U.S. at 285 (internal citations omitted).

Defendant cites Barton v. U.S. Postal Serv., 615 F. Sup. 2d 790 (N.D. Ind. 2009), in support of its argument that the record lacks of evidence of an arbitrary or capricious decision made by a postal service employee. However, a close reading of that case

persuades the Court that summary judgment is not the best vehicle for assessing this question.

In Barton, the plaintiff claimed that the Postal Service wrongfully denied his insurance claim for a laptop that allegedly went missing from a package somewhere in transit, in that a USPS employee tampered with the package, stole his laptop, and replaced it with a cement block before returning the package to Barton. The gist of the plaintiff's evidence was that he originally prepared the box for shipping with clear packing tape, but when the box (with the cement block inside) was returned to him, it had red, white, and blue USPS tape "all around the box." Id. at 793. In that case, the court did not grant summary judgment, but rather held a bench trial, despite the plaintiff "not submitt[ing] copies of the Postal Service letters denying his claim at each step of the claim and appeal process, and, thus, has not identified to the Court any specific deficiencies in the Postal Service's decision to deny his insurance claim." Id. at 795.

Furthermore, the magistrate judge who tried the case actually examined the box and came to the conclusion that it was more likely than not (because the original mailing label with Barton's handwriting was still on top of it, primarily) that the red, white, and blue USPS tape was not on the package as a

result of a USPS employee tampering with the package. It was for that reason that the court found "that Mr. Barton has failed to provide evidence that the box was tampered with while in the custody of the Postal Service sufficient for this Court to overturn the Postal Service's denial of his insurance claim. . . . Considering all the evidence, the Court finds that Mr. Barton has not met his burden of demonstrating that the Postal Service's actions in denying his insurance claim were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" <u>Id.</u>

The posture of the case in <u>Barton</u>, as well as the language used by the court in that case, presents persuasive authority to this Court that Defendant's request for summary judgment here should not be granted. First, the court in <u>Barton</u> allowed the case to proceed to a bench trial despite the plaintiff never providing the letters of denial from the USPS or precisely identifying which actions he alleged to have been arbitrary and capricious. Second, the court is actually quite clear that, implicitly, the plaintiff was claiming that it was <u>the denial itself</u> that had been arbitrary and capricious.

The Court also finds instructive the recent opinion in <u>Karch v. United States</u>, No. 16-C-405, slip op., 2016 WL 3676467 (E.D. Wis. July 7, 2016). In <u>Karch</u>, the court found that USPS's

application of a DMM rule (there, requiring documentary evidence from a third party to establish proof of value for a lost item) was not arbitrary and capricious, and dismissed the case for that reason. Id. at *2. The court in Karch stated: "Without third-party affirmation of the value of the items, Plaintiff was essentially requesting that USPS accept Plaintiff's word that the goods were worth the amount he requested. . . . USPS's refusal to accept Plaintiff's offer of proof was in accord with standard practices of insurance law and was not arbitrary and capricious." Id. There, the Court did not simply and reflexively assess whether USPS employees, in denying the claim, followed the letter of the D.M.M. regulations. Instead, it assessed the underlying reasonableness of the plaintiff's position (noting that he was asking USPS to take his word for it when it came to the value of the claim) and whether USPS's position was "in accord with standard practices of insurance law" in the process of deciding whether the decision to deny the claim was arbitrary and capricious.

Here, Plaintiff has provided the letters of denial, unlike the plaintiff in Barton. He has pointed to specific actions by USPS that he claims to have been arbitrary, capricious, or otherwise not in accordance with the law. The Court understands these to include, inter alia: the decision of the local postal

service employees not to accept or even view his photographs to
fill out or partially fill out PS Form 2856 [Docket Item 10-4 at
11 and 10-5 at 9 to 10]; the repeated requests to provide PS
Form 2856 when that was an internal form he did not have access
to and had been precluded from having filed on his behalf
[Docket Item 10-4 at 6]; the apparent decision to ignore or
decline to consider the photographs Plaintiff claims to have
included with his successive appeals during the administrative
claims review process [id.]; the regulation itself that, by its
terms, requires original packaging with no alternative for
mailers who are likely not to be in possession or have the
ability to control what happens to that original packaging, but
likely do have the ability and incentive to file the insurance
claim (especially when compared with the regulations for proof
of value, which are flexibly written to allow for reasonable
alternatives, and are implemented flexibly in practice[4]); the
decision not to include on the consumer-facing website and
immediate claim confirmation e-mail the requirements of the

---

[4] In Dosso, for example, the Assistant U.S. Attorney defending
the case sent the plaintiff a letter several months after the
case was filed telling him, "Mr. Dosso, if you provide me with a
website print out of the kind of computer showing its value and
a signed statement indicating the reason why you do not have the
original purchase receipt, I will send these items to USPS
directly and it is possible that your claim may still be
adjudicated." Dosso, supra, at *4.

D.M.M. generally and the specific requirement of retaining and
presenting the original damaged packaging [Id. at 6-10]; and the
decision to characterize Plaintiff's inability to provide the
original packaging and PS Form 2856 as his failure to do so
[Docket Item 10-4 at 11].

   The Court does not find, at this stage of the litigation,
that any of the above decisions were, in fact, arbitrary,
capricious, or otherwise not in accordance with law. However, in
light of the factual record that has been developed and
Plaintiff's allegations, the Court is not inclined to grant
summary judgment to Defendant on this issue because there is a
legitimate dispute whether Defendant's insistence upon literal
compliance with its regulations, wherein Defendant itself may
have frustrated Plaintiff's reasonable efforts of compliance,
was arbitrary and capricious. These disputes will require trial.


**IV.  CONCLUSION**

   For the reasons discussed herein, Defendant United States
Postal Service's motion for summary judgment will be denied. The
accompanying Order will be entered.


**  March 9, 2017   **                  **   s/ Jerome B. Simandle   **
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge